Roslyn Henry OLDHAM, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–92–00139–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 21, 1999.

Kenneth W. Smith, Houston, for appellants.

Alan Curry, Houston, for appellees.

Panel consists of Chief Justice MURPHY and Justices ANDERSON and HUDSON.

## OPINION ON REMAND

PAUL C. MURPHY, Chief Justice.

This matter is before this Court on remand from the Texas Court of Criminal Appeals. *See Oldham v. State*, 977 S.W.2d

---

**1.** *See also Oldham v. State*, 889 S.W.2d 461 (Tex.App–Houston [14th Dist.] 1994), *rev'd*, 977 S.W.2d 354 (Tex.Crim.App.1998), *cert. de-*

354 (Tex.Crim.App.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1121, 143 L.Ed.2d 116 (1999).[1]

Roslyn Henry Oldham (Appellant) was indicted for the third degree felony offense of forgery. *See* TEX. PENAL CODE ANN. § 32.21 (Vernon 1989). Appellant pleaded not guilty and was tried by a jury. Upon the jury's guilty finding, the trial court sentenced Appellant to three years' confinement in the Institutional Division of the Texas Department of Criminal Justice. *See* TEX. PENAL CODE ANN. § 12.34(a)(1) (Vernon Supp.1994). On appeal to this Court, Appellant presents several points of error, contending that the evidence was insufficient to support her conviction, she was denied due process because her bail was set by an assistant district attorney rather than a court, her speedy trial rights were violated, the trial court erred in failing to order a pre-sentence investigation report, the trial court erred in not allowing certain testimony during the guilt phase of trial, the trial court erred in overruling her request to make an offer of proof concerning certain testimony during the punishment phase of trial, she was denied effective assistance of counsel at trial, and that she was denied the right to assistance of counsel or effective assistance of counsel during a critical stage of the proceedings. We affirm.

### BACKGROUND

In December 1988, Steve Pond discovered that three blank checks were missing from his trucking company's checkbook. Mr. Pond notified his bank and requested a stop-payment order be placed on the missing checks.

In January 1989, Appellant attempted to cash one of Mr. Pond's missing checks at a grocery store. Appellant told an employee of the store that the check was issued to her from her employer. The check was in the sum of $2,137.00. Not familiar with

*nied,* —— U.S. ——, 119 S.Ct. 1121, 143 L.Ed.2d 116 (1999).

the company name appearing on the check and being late in the evening, the store employee told Appellant that he would have to verify the availability of the funds with the bank the next morning. Appellant agreed and said she would return the following morning to pick up the cash. The following morning, the employee gave the check to the store owner so that he could verify the availability of funds.

The store owner contacted the owner of the company about the check. Mr. Pond responded to the store owner by telling him not to cash the check because that check and others were stolen from his company's checkbook. Mr. Pond went to the store to see the check. He confirmed to the store owner that the check was indeed one of the missing checks from his company checkbook. Mr. Pond told the store owner that his name must have been forged on the signature line of the check. The store owner gave the check to Mr. Pond so that it could be given to the Harris County District Attorney's Office. Appellant was subsequently charged with forgery.

### DISCUSSION

#### Sufficiency of the Evidence

In her first point of error, Appellant contends that the evidence was legally and factually insufficient to support her conviction for forgery.

■ We review challenges to the legal sufficiency of the evidence to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond

a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The determination of legal sufficiency is made as a matter of law, and, succinctly stated, means "the case should never have been submitted to the jury." *See Clewis v. State,* 922 S.W.2d 126, 132–33 (Tex.Crim.App.1996).

■ In this case, under section 32.21 of the Texas Penal Code, the State was required to prove beyond a reasonable doubt that Appellant forged[2] a writing with intent to defraud or harm another. *See* TEX. PENAL CODE ANN. § 32.21(b) (Vernon 1989). Stated differently, the State was required to prove beyond a reasonable doubt that Appellant (1) with intent to defraud or harm another, (2) passed, (3) a writing, (4) that purported to be the act of another, and (5) that other person did not authorize the act. *Williams v. State,* 688 S.W.2d 486, 488 (Tex.Crim.App.1985); *see also* TEX. PENAL CODE ANN. § 32.21(a) (Vernon 1989).

■ The "intent" to defraud or harm may be established by circumstantial evidence. *Williams,* 688 S.W.2d at 488. Proof of intent to defraud is also derivative of other elements. In the case of forgery, the culpable mental state requires proof of knowledge that the check is forged. *Id.* If the State proves that an actor has knowledge that a particular check is forged, proof of intent to defraud is inferred. *Id.* Further, if there is sufficient evidence to establish an actor's theft of the instrument ultimately forged, the evidence is deemed sufficient to show knowledge of the forgery, and therefore sufficient to show an

---

**2.** Section 32.21 of the Texas Penal Code defines "forge" as the following:
(A) to alter, make, complete, execute, or authenticate any writing so that it purports:
(i) to be the act of another who did not authorize that act;
(ii) to have been executed at a time or place or in a numbered sequence other than was in fact the case; or
(iii) to be a copy of an original when no such original existed;

(B) to issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged within the meaning of Paragraph (A); or
(C) to possess a writing that is forged within the meaning of Paragraph (A) with intent to utter it in a manner specified in Paragraph (B).
TEX. PENAL CODE ANN. § 32.21(a) (Vernon 1989).

intent to defraud or harm. *Wallace v. State*, 813 S.W.2d 748, 751 (Tex.App.-Houston [1st Dist.] 1991, no pet.).

■ Chand Khan, the store clerk of B & J Corner Store, testified that Appellant came into the store and attempted to cash a check. Mr. Khan was familiar with Appellant because she was often in the store cashing checks and making purchases. Appellant endorsed the back of the check in Mr. Khan's presence and presented it to him. Mr. Khan asked Appellant for her driver's license and wrote the license number on the back of the check, underneath Appellant's endorsement signature. After Mr. Khan realized that the check was from a company he was not familiar with, he told Appellant that before cashing the check, he would have to verify the availability of funds with the bank. Because it was late in the evening, he told Appellant that he would keep the check until the next morning when he could contact the bank. Appellant told Mr. Khan that she would return the next morning.

The next morning, before he contacted the bank, Mr. Khan gave the check to Irshad Alvi, the store owner. Mr. Alvi contacted the owner of the company from whom the check was issued. Mr. Alvi spoke to Steve Pond, the owner of Pond Freight Services, Inc. Mr. Pond told Mr. Alvi to not cash the check because it was probably one of the checks stolen from his company checkbook. Mr. Pond went to Mr. Alvi's store to inspect the check. Mr. Pond confirmed that the check was indeed one of the checks stolen from his company checkbook. Mr. Pond took possession of the check so that he could contact the Harris County District Attorney's Office.

Mr. Pond testified that three of his company checks were stolen from his checkbook, including check number 1707, the check he retrieved from Mr. Alvi. Mr. Pond testified that he did not authorize anyone to have possession of check number 1707. Mr. Pond also testified that the name appearing on the check is "R. H. Oldham." He testified that he knew Appellant and that she used that name. Mr. Pond knew Appellant through her association with one of his employees. He testified that the signature on the check was not his, nor did he ever issue any checks to Appellant.

Viewing the record in the light most favorable to the verdict, the evidence shows that Appellant knew she was in possession of a check that contained a forged signature before she presented it to the B & J Corner Store. Further, the evidence was sufficient to show that Appellant passed a writing that purported to be the act of another, with the intent to defraud or harm another. *See Williams*, 688 S.W.2d at 488; *see also* TEX. PENAL CODE ANN. § 32.21(a) (Vernon 1989). Thus, the evidence is legally sufficient to support Appellant's conviction because any rational finder of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Clewis*, 922 S.W.2d at 132–33.

■ Appellant also contends that the evidence is, nevertheless, factually insufficient to support the jury's finding of guilt. In conducting a factual sufficiency review, we view "all the evidence without the prism of in the light most favorable to the prosecution ... and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Clewis*, 922 S.W.2d at 129. Notwithstanding our authority to conduct factual sufficiency review under the aforementioned standard, our role is "not ... to 'find' facts, or substitute [our] judgment for that of the jury." *Id.* at 135.

■ The only evidence in the record contrary to that set forth above in our legal sufficiency review came from Appellant. She testified that she was not the person who presented the check at issue to Mr. Khan. However, the jury is permitted to believe or disbelieve any part of a witness' testimony, including a defendant. *Jones v. State*, 984 S.W.2d 254, 258 (Tex. Crim.App.1998). It is clear in this case

that the jury chose to reject Appellant's credibility. This Court will not disturb a jury's credibility finding. *See id.* Viewing all the evidence in the record, including evidence favorable to Appellant, we conclude that the jury's finding is not "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *See Clewis,* 922 S.W.2d at 129. Thus, the evidence is factually sufficient to support the jury's verdict. Point of error is overruled.

### Bail

■■■ In her next three points of error, Appellant maintains that her due process rights were violated in this case because an assistant district attorney set the amount of her pre-trial bail, rather than a court. "Issues concerning pre-trial bail are moot after the accused is convicted." *Myres v. State,* 866 S.W.2d 673 (Tex.App.-Houston [1st Dist.] 1993, pet. ref'd) (citing *Henriksen v. State,* 500 S.W.2d 491, 494 (Tex.Crim.App.1973)). These points of error are overruled.

### Speedy Trial

In her next two points of error, Appellant contends that her rights to a speedy trial were violated because she was not tried until thirty months elapsed between her indictment and trial. The record shows that this contention was not raised by Appellant at the trial court level.

■■■■ The United States Supreme Court has set forth four factors by which to evaluate an appellant's speedy trial claim: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *See Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Guevara v. State,* 985 S.W.2d 590, 593 (Tex.App.-Houston [14th Dist.] 1999, pet. filed). At least three of the factors cannot be developed for the record or properly evaluated on appeal without a hearing in the trial court. *Guevara,* 985 S.W.2d at 593. For example, unless a defendant

brings the matter to the attention of the trial court, he or she cannot be said to have asserted his or her right to a speedy trial. *Id.* Likewise, without a hearing, the prosecution has no opportunity to establish the reasons for the delay, and neither party can adequately establish or refute the existence of prejudice. *Id.* Accordingly, Appellant waived the issue by failing to raise it in the trial court.

This would ordinarily conclude our analysis. However, in *Marin v. State,* 851 S.W.2d 275 (Tex.Crim.App.1993), the Court of Criminal Appeals held the following:

> [O]ur system may be thought to contain rules of three distinct kinds: (1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigants which are to be implemented upon request. In the present context, the most important thing to remember about the Texas law of procedural default is that it only applies to the last category.

*Id.* at 279. The court also held that many, but not all, constitutional rights fall within the second category. *See id.* With respect to rights in the second category, the court held:

> [The defendant] need make no request at trial for the implementation of such rights, as the judge has an independent duty to implement them absent an effective waiver by him. As a consequence, failure of the judge to implement them at trial is an error which might be urged on appeal whether or not it was first raised in the trial court.

*Id.* at 280.

■■■ While the right to a speedy trial is affirmatively guaranteed by both the state and federal constitutions, the United States Supreme Court held that the defendant bears some responsibility to assert the right. *See Barker,* 407 U.S. at 528, 92 S.Ct. 2182. In fact, a defendant's failure to assert the right can be an indica-

tion that he or she does not want a speedy trial. *See id.* at 534–36, 92 S.Ct. 2182. We hold, therefore, that the right to a speedy trial is a right to be implemented upon request, and that it can, therefore, be waived by want of such a request. *See Guevara,* 985 S.W.2d at 590. Because Appellant did not assert her right to a speedy trial in this case, she waived the issue for appellate review. *See id.* These points of error are overruled.

### Pre–Sentence Investigation Report

■ In her next several points of error, Appellant contends that the trial court erred in failing to order a pre-sentence investigation report prior to sentencing. The record shows that Appellant did not request a pre-sentence investigation report be prepared for the trial court to consider prior to sentencing. Absent a request in the record by Appellant for the trial court to order a pre-sentence investigation report, the issue is waived and not preserved for appellate review. *See* TEX.R.APP. P. 33.1(a); *Stancliff v. State,* 852 S.W.2d 639, 640 (Tex.App.-Houston [14th Dist.] 1993, pet. ref'd). These points of error are overruled.

### Testimony

■ Appellant contends that the trial court erred in refusing to allow her trial counsel to elicit certain testimony. Specifically, Appellant contends that she should have been allowed to "question witnesses about the identity of the person who tried to cash the check, about problems Appellant had with her former roommate about Appellant's property which was stolen by the roommate, including Appellant's drivers [sic] license...." Appellant fails to develop in her brief any argument relating to why this testimony was necessary or admissible. *See* TEX.R.APP. 38.1(h). Nor

are there any citations to any relevant authority in support of her point of error. *See id.*

[22] Moreover, in order for a complaint concerning the exclusion of evidence to be considered by an appellate court, the record must show what the excluded testimony would have been. *Stewart v. State,* 686 S.W.2d 118, 122 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 866, 106 S.Ct. 190, 88 L.Ed.2d 159 (1985). Absent a showing of what such testimony would have been, or an offer of a statement concerning what the excluded evidence would show, nothing is presented for review. *Id.; Adams v. State,* 969 S.W.2d 106, 112 (Tex.App.-Dallas 1998, no pet.). The record before us contains no evidence of what the excluded testimony would have been, much less what it would have shown. Consequently, nothing is presented for our review.[3] *See id.* This point of error is overruled.

### Offer of Proof

Appellant contends that the trial court erred in refusing to allow her trial counsel to present an offer of proof concerning certain testimony during the punishment phase of her trial. Appellant's contention is not supported by the record. There is nothing in the record to suggest that Appellant's trial counsel requested an offer of proof during any of the testimony presented during the punishment phase. Thus, the trial court never made any ruling concerning such request. This contention is without merit, and it is accordingly overruled. *See Griffith v. State,* 983 S.W.2d 282, 287 (Tex.Crim.App.1998).

### Ineffective Assistance of Counsel at Trial

Appellant contends that she was denied effective assistance of counsel at the guilt phase of her trial because her trial counsel

---

**3.** Nevertheless, even if Appellant's contention was properly briefed and preserved for appellate review, we note that the record shows that Appellant's trial counsel was permitted to cross-examine Mr. Khan *ad nauseam* about the identification of the person who presented

the forged check. Further, we discern no abuse of trial court discretion in sustaining the State's objections to the other specific testimony identified in Appellant's point of error. *See Alvarado v. State,* 912 S.W.2d 199, 216 (Tex.Crim.App.1995).

failed to impeach a witness, in his lack of witness preparation, and in his failure to secure a ruling on his objection to the State impeaching Appellant with a prior theft conviction.

■■■ We measure claims of ineffective assistance of counsel at the guilt stage against the standard set forth in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also Ramirez v. State,* 987 S.W.2d 938, 942–43 (Tex.App.-Austin 1999, no pet. h.). The *Strickland* standard requires the defendant to show both that his counsel made serious errors and that those errors caused serious harm:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland,* 466 U.S. at 687, 104 S.Ct. 2052.

■■■ In determining whether an appellant satisfied the first element of the test, we decide whether the record establishes that counsel failed to provide reasonably effective assistance. *Id.* at 687–88, 104 S.Ct. 2052. The appellant must demonstrate that counsel's performance was unreasonable under the prevailing professional norms and that the challenged action was not sound trial strategy. *Id.* at 688, 104 S.Ct. 2052; *Stafford v. State,* 813 S.W.2d 503, 506 (Tex.Crim.App.1991). We do not evaluate the effectiveness of counsel in hindsight, but from counsel's perspective at trial. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *Ex parte Kunkle,* 852 S.W.2d 499, 505 (Tex.Crim.App.1993); *Stafford,* 813 S.W.2d at 506. Further, we assess the totality of counsel's representation, rather than his or her isolated acts or omissions. *See id.* at 689, 104 S.Ct. at

2052; *Ramirez,* 987 S.W.2d at 943. The Court of Criminal Appeals explained that we must presume defense counsel provided reasonable professional assistance and the defendant must present proof to overcome this presumption:

> Under the *Strickland* test, the defendant bears the burden of proving ineffective assistance. In addition, when reviewing a claim of ineffective assistance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"

*Jackson v. State,* 877 S.W.2d 768, 771 (Tex. Crim.App.1994) (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052). The standard of proof for ineffectiveness of counsel is a preponderance of the evidence. *See Moore v. State,* 694 S.W.2d 528, 531 (Tex. Crim.App.1985).

■■■ Appellant contends that her defensive theory was "misidentification." As we understand it, Appellant contends that Mr. Khan's "bias" was not developed at trial by trial counsel and that such bias would have shown that Mr. Khan's identification of Appellant was in error. However, Appellant does explain in her brief on what basis Mr. Khan was biased against her. Further, the record shows that Appellant's trial court vigorously cross-examined Mr. Khan concerning the accuracy of his identification of Appellant, including the number of hours he worked on the day the forged check was presented, and the number of customers he encountered that day who presented checks for cashing. Any basis for "misidentification" by Mr. Khan was fully developed by Appellant's trial counsel.

■■■ Appellant also contends that her trial counsel failed to prepare witnesses for trial. This contention is based upon trial counsel's alleged failure to make Bet-

ty Jordan, Appellant's former employer, aware that copies of previous payroll checks she issued to Appellant would be probative evidence. Appellant asserts that her payroll checks were always made payable to "Roslyn [Oldham]." She contends that because the forged check was made payable to "R. H. [Oldham]," the jury would have drawn the conclusion that Appellant was not the same person who presented the forged check for cashing if it would have seen copies of Appellant's payroll checks. She further asserts that this evidence would have "convincingly" shown that Mr. Khan was "lying" about the person who presented the check. This contention is frivolous.

■ Appellant also asserts that her trial counsel was ineffective in preparing Betty Jordan to testify because he failed to instruct her to bring copies of Appellant's time cards. Notably, Appellant does not contend that the time cards would have shown that she was working at the time the forged check was presented for cashing. Rather, she contends that the time cards would have enabled Betty Jordan to "more clearly" testify about the time of an event when Appellant's roommate presented a check "similar to the one forged" and asked Betty Jordan "to cash it." Appellant does not explain the significance of this testimony nor how the utilization of Appellant's time cards would have shown that Appellant was not the person who presented the forged check for cashing. Thus, Appellant has not shown that her trial counsel was unconstitutionally deficient for not instructing Betty Jordan to have copies of Appellant's time cards available during her testimony.

■ Lastly, Appellant contends that her trial counsel was ineffective because he failed to obtain a ruling on his objection to the State's attempt to impeach her during cross-examination with her prior theft conviction. Our review of the record indicates that Appellant's trial counsel did preserve this issue for appellate review. Further, because Appellant's prior conviction for theft involved a crime of "moral turpitude," it was admissible in evidence for the purpose of attacking the credibility of Appellant. *See* Tex.R. Evid. 609(a); *Ludwig v. State,* 969 S.W.2d 22, 28 (Tex.App.-Fort Worth 1998, pet. ref'd). Trial counsel's objection was therefore properly overruled.

We conclude that Appellant's trial counsel rendered reasonably effective assistance of counsel. *See Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052; *Ramirez,* 987 S.W.2d at 943. Point of error is overruled.

*Post-trial Assistance of Counsel and Effective Assistance of Post-trial Counsel*

■ In her final two points of error, Appellant contends that she was denied post-trial assistance of counsel or effective assistance of post-trial counsel during a critical stage of the proceedings, to wit: during the time permitted to file a motion for new trial following her conviction and punishment. In our earlier opinion, we determined that Appellant was denied her Sixth Amendment right to counsel, abated the appeal, and remanded Appellant's case to the trial court to allow her to file a motion for new trial. *See Oldham v. State,* 889 S.W.2d 461 (Tex.App.-Houston [14 th Dist.] 1994), *rev'd,* 977 S.W.2d 354 (Tex. Crim.App.1998), *cert. denied,* — U.S. ——, 119 S.Ct. 1121, 143 L.Ed.2d 116 (1999). On the State's petition for discretionary review, the Court of Criminal Appeals held that "the record shows that the appellant was officially represented by counsel at all times in the litigation, and the appellant has failed to overcome the presumption that counsel was acting effectively at all times." *Oldham,* 977 S.W.2d at 363. This Court is bound by the holding reached by the Texas Court of Criminal Appeals. Consequently, Appellant's final two points of error are respectively overruled.

The judgment is affirmed.