Opinion issued February 3, 2005



     











In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00871-CR




LESLIE LEE MILLER, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 184th District Court
Harris County, Texas
Trial Court Cause No. 909121




O P I N I O N

          A jury found appellant, Leslie Lee Miller, guilty of the offense of murder


 and
assessed his punishment at confinement for 25 years. In five points of error, appellant
contends that the trial court erred in denying his request to instruct the jury on the
lesser offense of criminally negligent homicide,


 the evidence was legally and
factually insufficient to support the jury’s rejection of his claim of self-defense, and
the trial court erred in denying his motion for new trial, which was based on his claim
of ineffective assistance of counsel. We affirm.
Background
          David Weber, an automobile painter and body shop worker, testified that on 
on April 17, 2002, at approximately 2:30 p.m., appellant and John Carter came to
Weber’s place of work because appellant wanted Weber to go to the home of Robert
Ray Broussard, the complainant, and to wet-sand a car so that it could be buffed. 
When Weber told appellant that he could not sand the car until later that evening,
appellant became irate. After appellant had entered his pickup truck to leave, Weber
heard appellant’s cellular telephone ring and then overheard appellant speaking with
the complainant. Weber characterized appellant’s mood as angry as appellant and the
complainant argued over money. After appellant had ended the conversation with the
complainant, Carter told appellant, “We got a piece. We can take care of that.” 
Appellant then responded, “Yes. We do have a nine in the truck.” Weber explained
to the jury that appellant’s reference to a “nine” meant that appellant had a nine
millimeter pistol.
          Paula Ritter, who was the complainant’s girlfriend, testified that the
complainant ran an automobile body shop behind the house in which she and the
complainant lived. She further testified that on April 17, 2002, she heard the
complainant speaking on a telephone with appellant. She explained that appellant
owed the complainant $1,000 and that the complainant intended to sell a firearm that
appellant had given to the complainant as collateral. Later, at approximately 3:00
p.m., Ritter looked out her window and saw appellant drive his pickup truck to the 
complainant’s body shop and park in the third bay. When she subsequently looked
out the window again, she saw what appeared to be an injured child walking in front
of the shop and appellant’s truck speeding away “fast.” When Ritter walked outside
to help the person with the broken arm, she found that he was the complainant and
that he had been shot.
          Baytown Police Officer S. Hedger testified that he arrived on the scene shortly
after the shooting and found two shell casings in the body shop. Baytown Police
Detective T. Pasquale testified that on April 18, 2002, at approximately 1:00 a.m., he
found a disassembled handgun and two magazines buried in the backyard of the
house of appellant’s parents. Ballistic tests performed by Deputy B. Bruns of the
Harris County Sheriff’s Department showed that the shell casings found in the body
shop and the bullet removed from the complainant’s body came from the handgun
recovered from the backyard. Assistant Harris County Medical Examiner H. Narula
testified that the complainant died from a single gunshot wound that traveled through
the complainant’s arm and entered his chest. Police officers arrested appellant on
April 18, 2002 without incident in Louisiana.
          Appellant testified that he and Carter went to the complainant’s body shop to
talk business and to retrieve a gun that the complainant had previously borrowed from
appellant. When appellant asked the complainant to return the gun, the complainant
responded by stating, “Well, I will tell you what. You want your gun? I am going to
give you your gun, but you are not going to like the way that I am going to give it to
you.” The complainant retrieved something from behind a Suburban, and, as he
walked back toward appellant, appellant shot the complainant. Appellant testified
that he fired his handgun once in self-defense because he thought that the
complainant had a gun.



          Carter testified that appellant and he delivered paint and lacquer thinner to the
complainant at his shop. When appellant asked for his gun from the complainant, the
complainant replied, “I’ll give you your gun back, but it is not how you want it.” 
After the complainant had walked around a corner with a black object in his hand,
appellant shot the complainant and said, “What was I supposed to do? He had a gun.” 
On cross-examination, Carter admitted that he had buried the gun and the magazines
at appellant’s direction while appellant burned his clothes.
        Lesser Included Offense
          In his first point of error, appellant argues that the trial court erred in denying
his request to instruct the jury on the lesser offense of criminally negligent homicide
because the evidence “was subject to the interpretation that the complainant was
never in fact armed, and that the appellant had acted negligently in believing that the
complainant was in fact armed.” (Emphasis added.)
          A person commits the offense of murder if he intentionally or knowingly
causes the death of an individual or intends to cause serious bodily injury and
commits an act clearly dangerous to human life. Tex. Pen. Code Ann. § 19.02(b)(1),
(2) (Vernon 2003). A person commits the offense of criminally negligent homicide
if he causes the death of an individual by criminal negligence. Tex. Pen. Code Ann.
§ 19.05 (Vernon 2003). The Texas Penal Code defines the pertinent culpable mental
states as follows:
(a) A person acts intentionally, or with intent, with respect to the nature
of his conduct or to a result of his conduct when it is his conscious
objective or desire to engage in the conduct or cause the result. 
 
(b) A person acts knowingly, or with knowledge, with respect to the
nature of his conduct or to circumstances surrounding his conduct when
he is aware of the nature of his conduct or that the circumstances exist. 
A person acts knowingly, or with knowledge, with respect to a result of
his conduct when he is aware that his conduct is reasonably certain to
cause the result.

          . . . .
 
(d) A person acts with criminal negligence, or is criminally negligent,
with respect to circumstances surrounding his conduct or the result of
his conduct when he ought to be aware of a substantial and unjustifiable
risk that the circumstances exist or the result will occur. The risk must
be of such a nature and degree that the failure to perceive it constitutes
a gross deviation from the standard of care that an ordinary person
would exercise under all the circumstances as viewed from the actor’s
standpoint.

Tex. Pen. Code Ann. § 6.03(a), (b), (d) (Vernon 2003).

          An offense is a “lesser included offense” if “it differs from the offense charged
only in the respect that a less capable mental state suffices to establish its
commission.” Tex. Code Crim. Proc. Ann. art. 37.09(3) (Vernon 1981). A
defendant is entitled to a lesser included offense instruction if (1) proof of the charged
offense includes the proof required to establish the lesser included offense and (2)
there is some evidence in the record that would permit a jury to rationally find that
if the defendant is guilty, he is guilty only of the lesser offense. Ferrel v. State, 55
S.W.3d 586, 589 (Tex. Crim. App. 2001). Such evidence must be directly germane
to a lesser included offense before an instruction is warranted. Bignall v. State, 887
S.W.2d 21, 24 (Tex. Crim. App. 1994). We must review all evidence presented at
trial to make this determination. Rousseau v. State, 855 S.W.2d 666, 673 (Tex. Crim.
App. 1993). If the evidence raises the issue of a lesser included offense, a jury charge
must be given based on that evidence, “whether produced by the State or the
defendant and whether it be strong, weak, unimpeached, or contradicted.” Id. at 672
(quoting Bell v. State, 693 S.W.2d 434, 442 (Tex. Crim. App. 1985)). Criminally
negligent homicide is a lesser included offense of murder. See Saunders v. State, 840
S.W.2d 390, 391 (Tex. Crim. App. 1992). Thus, we consider whether some evidence
exists that appellant was guilty only of criminally negligent homicide. 
          Appellant asserts that because the pistol that he was concerned about was
found in the residence, not at the shop, and that Carter saw the complainant with only
a black object in his hand, the jury was entitled to believe that the complainant was
not armed and that appellant acted negligently in believing otherwise. Appellant
essentially argues that he was criminally negligent in acting in self-defense.
          However, “a person is justified in using force against another when and to the
degree he reasonably believes the force is immediately necessary to protect himself
against the other’s use or attempted use of unlawful force.” Tex. Pen. Code Ann. §
9.31 (Vernon 2003) (emphasis added). Moreover, a person is justified in using
deadly force against another if he would be justified in using force under section 9.31,
if a reasonable person in the actor’s situation would not have retreated, and when and
to the degree that “he reasonably believes” that the deadly force is immediately
necessary to protect himself against the other’s use or attempted use of unlawful
deadly force. Tex. Pen. Code Ann. § 9.32(a) (Vernon 2003). Self-defense is a legal
justification excusing otherwise criminal conduct. The question before the jury was
whether it was “reasonable” for appellant to believe that the use of deadly force was
immediately necessary to protect himself against the complainant’s use or attempted
use of unlawful deadly force, not whether appellant was criminally negligent “in
believing that the complainant was in fact armed.” (Emphasis added).
          Criminally negligent homicide requires that a person act with criminal
negligence, which “involves inattentive risk creation, that is, the actor ought to be
aware of the risk surrounding his conduct or the results thereof, but consciously
disregards that risk.” Lugo v. State, 667 S.W.2d 144, 147–48 (Tex. Crim. App. 1984)
(quoting Lewis v. State, 529 S.W.2d 550, 553 (Tex. Crim. App. 1975)). The essence
of criminal negligence is the failure of the actor to perceive the risk created by his
conduct. Ybarra v. State, 890 S.W.2d 98, 110 (Tex. App.—San Antonio 1994, pet.
ref’d). In order for a defendant to be entitled to a jury charge on criminally negligent
homicide, the record must contain “some evidence” that the defendant did not intend
the resulting death or know that it was reasonably certain to occur. Id. If such
evidence is present, the record must contain evidence showing that the defendant was
unaware of the risk. Id. 
          Here, appellant unequivocally testified that he intentionally shot the
complainant to protect himself. Likewise, Carter’s testimony demonstrates that
appellant intentionally shot the complainant. There is no evidence in the record that
appellant did not intend the resulting death or not know that it was reasonably certain
to occur. Thus, the record is also devoid of any evidence that appellant was unaware
of any such risk. We conclude that no evidence was presented that would permit a
jury to rationally find that if appellant was guilty of an offense, he was guilty only of
the offense of criminally negligent homicide. 
          Accordingly, we hold that the trial court did not err in denying appellant’s
request to instruct the jury on the lesser offense of criminally negligent homicide. See
Lafleur v. State, 84 S.W.3d 309, 311 (Tex. App.—Beaumont 2002) (concluding that
appellant was not entitled to charge on lesser included offense of criminally negligent
homicide because appellant admitted to shooting and did not claim that he was
unaware of any risk), rev’d on other grounds, 106 S.W.3d 91 (Tex. Crim. App. 2003);
Johnson v. State, 915 S.W.2d 653, 658 (Tex. App.—Houston [14th Dist.] 1996, pet.
ref’d) (concluding that appellant was not entitled to charge on lesser included offense
of criminally negligent homicide because appellant’s defense was self-defense, not
an unawareness of risk in exhibiting a loaded gun).
          We overrule appellant’s first point of error.
Sufficiency of the Evidence
          In his second and third points of error, appellant argues that the evidence is
legally and factually insufficient to support the jury’s rejection of his claim of self-
defense because “the State never rebutted [his] assertion of self-defense beyond a
reasonable doubt.”
          A defendant has the burden of producing some evidence to support a claim of
self-defense. Zuliani v. State, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). Once the
defendant produces such evidence, the State then bears the burden of persuasion to
disprove the raised defense. Id. The burden of persuasion is not one that requires the 
production of evidence; rather, it requires only that the State prove its case beyond
a reasonable doubt. Id. When a fact finder determines that the defendant is guilty,
there is an implicit finding against the defensive theory. Id.
          It is well-settled that when a defendant challenges the legal sufficiency of the
evidence supporting a fact finder’s rejection of a defense such as self-defense in a
murder case, “we look not to whether the State presented evidence which refuted
appellant’s self-defense testimony, but rather we determine whether after viewing all
the evidence in the light most favorable to the prosecution, any rational trier of fact
would have found the essential elements of murder beyond a reasonable doubt and
also would have found against appellant on the self-defense issue beyond a
reasonable doubt.” Saxton v. State, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).
          When a defendant challenges the factual sufficiency of the evidence supporting
a fact finder’s rejection of a defense, we review all of the evidence in a neutral light
and ask whether the State’s evidence taken alone is too weak to support the finding
and whether the proof of guilt, although adequate if taken alone, is against the great
weight and preponderance of the evidence. Zuliani, 97 S.W.3d at 595.
          As noted above, a person commits the offense of murder if he intentionally or
knowingly causes the death of an individual or intends to cause serious bodily injury
and commits an act clearly dangerous to human life. Tex. Pen. Code Ann. §
19.02(b)(1), (2). Moreover, a person is justified in using deadly force against another
if he would be justified in using force under section 9.31, if a reasonable person in the
actor’s situation would not have retreated, and when and to the degree “he reasonably
believes” that the deadly force is immediately necessary to protect himself against the
other’s use or attempted use of unlawful deadly force. Tex. Pen. Code Ann. §
9.32(a).
          In regard to both his legal and factual sufficiency points, appellant directs our
attention to his and Carter’s testimony that the complainant threatened appellant and
that appellant “believed that the complainant obtained a pistol and was about to use
it against him.” He also argues generally that it was not reasonable for him to retreat
“where at the moment the deadly force was required the appellant could not have
safely left the complainant’s shop.” 
          However, Weber testified that when appellant left Weber’s place of work after
his argument on the telephone with the complainant, appellant was angry and made
explicit reference to his nine millimeter pistol after Carter had stated, “We got a piece.
We can take care of that.” Ritter established that the complainant intended to sell a
firearm that appellant had left him as collateral. It was this firearm that appellant
demanded from the complainant at the time of the shooting. After the shooting, Ritter
saw appellant’s truck speeding away. Baytown Police officers established that the
gun that appellant used to shoot the complainant had been disassembled and buried
in the backyard of the home of appellant’s parents. Also, Carter testified that he had
buried the gun and the magazine at appellant’s direction while appellant burned his
clothes. Moreover, appellant left Texas and was arrested in Louisiana the day after
the shooting. 
          Although appellant testified that the complainant had a gun, police officers did
not find a handgun in the body shop or anywhere near the complainant. Rather, the
officers found a handgun inside Ritter’s house. Moreover, Detective Rupf, a
Louisiana police officer, testified that he took appellant’s statement the day after the
shooting and that appellant did not mention that the complainant had a gun. Finally,
other than making a general argument, appellant does not direct us to any evidence
in the record on the issue of retreat. He simply presented no testimony that he could
not have retreated from the complainant.
          Based on all of the evidence presented at trial, viewed in the light most
favorable to the verdict, we hold that a rational jury could have found the essential
elements of the offense of murder beyond a reasonable doubt and also could have
found against appellant on the self-defense issue. In regard to the factual sufficiency
of the evidence, we note that the jury’s decision to accept or to reject appellant’s
claim of self-defense ultimately hinged on appellant’s credibility. Moreover,
appellant’s flight immediately after the shooting and his attempts to hide evidence
constitute circumstantial evidence of his guilt. See Valdez v. State, 623 S.W.2d 317,
321 (Tex. Crim. App. 1979) (holding that flight alone is insufficient to support guilty
verdict, but is circumstance raising inference of guilt). After reviewing all of the
evidence in a neutral light, we hold that the State’s evidence, taken alone, is not too
weak to support the jury’s finding of guilt and rejection of appellant’s self-defense
claim and that the proof of appellant’s guilt is not against the great weight and
preponderance of the evidence. Accordingly, we further hold that the evidence is
legally and factually sufficient to support the jury’s finding of guilt and rejection of
appellant’s claim of self-defense.
          We overrule appellant’s second and third points of error.
Ineffective Assistance of Counsel
          In his fourth and fifth points of error, appellant argues that the trial court erred
in denying his motion for new trial, which was based on his claim of ineffective
assistance of counsel.


 Appellant asserts that his trial counsel provided ineffective
assistance by failing to produce a signed, original affidavit to effectively impeach the
testimony of David Weber.
          We review a trial court’s denial of a motion for new trial for an abuse of
discretion. Charles v. State, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004). Both the
United States and Texas Constitutions guarantee an accused the right to assistance of
counsel. U.S. Const. amend. VI; Tex. Const. art. I, § 10; see Tex. Code Crim.
Proc. Ann. art. 1.05 (Vernon 1977). This right includes the right to reasonably
effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686, 104 S.
Ct. 2052, 2063 (1984); Ex parte Gonzales, 945 S.W.2d 830, 835 (Tex. Crim. App.
1997). To prove ineffective assistance of counsel, an appellant must show that (1)
trial counsel’s representation fell below an objective standard of reasonableness,
based on prevailing professional norms and (2) the result of the proceeding would
have been different but for trial counsel’s deficient performance. Strickland, 466 U.S.
at 688–92, 104 S. Ct. at 2064–67; see also Thompson v. State, 9 S.W.3d 808, 812
(Tex. Crim. App. 1999). An appellant has the burden of proving his claim by a
preponderance of the evidence. Jackson v. State, 973 S.W.2d 954, 956 (Tex. Crim.
App. 1998). We apply a strong presumption that trial counsel was competent. 
Thompson, 9 S.W.3d at 813. We presume that counsel’s actions and decisions were
reasonably professional and motivated by sound trial strategy. Jackson v. State, 877
S.W.2d 768, 771 (Tex. Crim. App. 1994). 
          As noted above, Weber testified that on the day of the shooting, he overheard
a heated telephone conversation between appellant and the complainant. After
appellant finished his conversation with the complainant, Weber testified that Carter
stated, “We got a piece. We can take care of that.” Appellant responded, “Yes. We
do have a nine in the truck.” Weber testified that the reference to a nine meant that
appellant had a nine millimeter pistol. 
          During cross-examination, appellant’s counsel asked Weber whether he had
given an earlier written statement to appellant’s investigator wherein he stated that
Carter was the individual who had made the reference about the “nine” in the truck. 
Weber agreed that he had given a written statement to the investigator, but disagreed
that Carter had actually made the statement about the nine millimeter in the truck. 
Appellant’s counsel then attempted to impeach Weber with an affidavit that he had
previously given to the investigator, Alan Steuart. After reviewing the unsigned
affidavit, Weber stated that his actual, signed affidavit did not resemble the unsigned
affidavit presented to him by appellant’s counsel. 
          During re-direct examination, Weber repeated that appellant had stated that
there was a “nine in the back [of the truck].” Appellant’s counsel later presented the
testimony of Steuart, who told the jury that Weber’s signed, original affidavit stated
that it was Carter who had actually stated that there was a “nine” in the truck. 
However, Steuart did not have the signed, original affidavit. Appellant argues that his
trial counsel acted deficiently because he did not have the signed, original affidavit to
properly impeach Weber.
          During the hearing on the motion for new trial, appellant’s trial counsel testified
that appellant’s former counsel had given him the complete file and that the file did
not contain the signed, original affidavit made by Weber. Thus, appellant’s trial
counsel had Steuart testify that the unsigned copy of the affidavit, presented to Weber
during his testimony, was a true and correct copy of Weber’s signed, original affidavit.
          Here, appellant’s trial counsel informed the jury of the discrepancy between
Weber’s affidavit and his trial testimony. Appellant’s trial counsel cross-examined
Weber about his inconsistent statement, which alerted the jury to a variation in
Weber’s testimony. In addition, Steuart testified that the unsigned copy of the
affidavit was a true and correct copy of Weber’s signed, original affidavit. 
          We cannot conclude from this evidence that appellant’s trial counsel’s
performance was deficient. See Oldham v. State, 5 S.W.3d 840, 848 (Tex.
App.—Houston [14th Dist.] 1999, pet. ref’d) (holding no ineffective assistance of
counsel on failure to impeach when counsel vigorously cross-examined witness).
Thus, appellant did not show the trial court, by a preponderance of the evidence, that
his trial counsel’s representation fell below an objective standard of reasonableness
based on prevailing professional norms. Strickland, 466 U.S. at 694, 104 S. Ct. at
2064–65; Thompson, 9 S.W.3d at 812. Accordingly, we hold that the trial court did
not abuse its discretion in denying appellant’s motion for new trial.
          We overrule appellant’s fourth and fifth points of error.
Conclusion
          We affirm the judgment of the trial court.
 
 
 
                                                             Terry Jennings
                                                             Justice
 
Panel consists of Justices Taft, Jennings, and Bland.